Page number 22-7167, Diana Valle et al. imbalance versus Antonis Karagounis, Governor et al. Ms. Peron for the imbalance, Mr. Kraus for the appellees. We'll hear from you when you're ready, Ms. Peron. Good morning, your honors. If you want to the podium, the lectern can be lowered to switch over on the right. It's okay, used to being a little bit on the shorter side. Please the court, Claudette Peron, appearing on behalf of appellants, Diana Valle et al. Today, appellants argue the appeal of the district court's erroneous ruling, turning the established law of summary judgment on its head by using an anomalous interpretation and perverse application of the legal standard to a seemingly one-eyed review of the record. As established by decades of precedence, codified in the federal civil rules and taught in first year civil procedure, summary judgment is only appropriate if, after, assuming all facts and allegations, assertions made by the non-moving party, appellants, in this case, to be true and drawing all reasonable inferences from the evidence in the non-moving party's favor, it can be determined that there is no genuine dispute of any material issues of fact. Can you help me understand what facts do you believe are genuinely in dispute? That are material? Identify one, two, or three, the most important. The most important one, I believe, your honor, is whether or not the policy, the alleged policy of the defendant appellants, appellees, excuse me, was race-based or race or ethnicity applied. Out of nowhere, we get an affidavit from the appellee's manager saying this is our policy and it is unilaterally and equally applied to all customers. There is no evidence in the record other than the affidavit of the manager who was not present at any of these events. On the other hand, we have the testimony, deposition testimony, of the appellants, a number of the appellants. One, I believe it was Nick DiGasca, who indicated that she was told by one of the waitresses during the incident in January that the reason for this application of this policy to this family of was because they have problems with people of color. Then we have the evidence of, I believe it was Ms. Teib, who indicated that while she and her fellow diners ate or waited, excuse me, they never got to eat, waited to get their food, they observed a white party, a Caucasian party, come in, sit down, receive their water, their drinks, their appetizers, their meal, their dessert, finish their meal, and then pay by credit card, all while this group of black women sat and waited in the back around an ottoman, excuse me, around a coffee table in an ottoman. And then I believe we have some additional testimony from, I believe it was Ms. Aaliyah Sullivan or Mr. Williams, in which they indicated that they did not see anyone else during the brunch being asked to prepay, and they were the only couple of color in the restaurant at the time. I believe that's sort of the core of the issue. So with respect to the statement of the waitress, that's hearsay. You can't bind the defendant because she's not a manager, so under the admission of a party opponent rules or exception or hearsay definition, however you want to articulate it, statement by the waitress is not admissible to prove the defendant's liability or to be, so I'm not sure where that gets you. I would. You do agree that that's the way that I think it's rule 802, the admission of party opponent rule works. I agree, Your Honor. However, we do have the statement of Mr. Karagounis on the website where he says, this is our policy, and he does that more than once. I understand. I guess what I'm trying to understand is the theory of your lawsuit is, well, if you say that the theory of your lawsuit is that they did this because they had issues with people of color in their mind not paying, and that's the reason that motivated them to create the policy, I don't see how that gets you a claim, even if that were true, unless the policy were discriminatorily enforced. Even if there was a discriminatory basis for customers, then I don't see how you have a claim. Am I missing something there? Yes, Your Honor, and the fact is that it's a contention and the evidence shows that this policy, whether it be legitimate or not, is not unilaterally applied. Well, that's, I'm trying to separate these two things. One is, you seem to be saying that one of the disputed issues of fact is, was the policy race-based? I took that to mean that you were saying that, well, we think that the policy was created for some sort of racially discriminatory reason. I guess what I'm saying to you is that I don't see how that's really a material dispute of fact because, one, the only evidence you have of that is one statement that's hearsay that doesn't fit within the admission of a party opponent, so you don't have any evidence other than that that I saw from the briefing that the policy is race-based, so you don't have any admissible evidence of that. But secondly, even if you did, I don't understand your theory to be that, well, just because it's race-based, it's illegal even if it were applied to all customers the same. I don't see that argument in your brief, or is that argument in your brief, and what's the support for that argument? I don't believe we argue that directly. I believe the argument is that it is whatever the policy. First of all, we don't necessarily believe that it is a legitimate policy because we, the appellants, asked for documentation of this policy and were not given anything in discovery, and as a matter of fact, during discovery, we were, the appellants, or excuse me, appellees, indicated that there is no written documentation or anything other than this affidavit that they produced that indicates that there is such a policy, so the policy issue itself is suspicious. We also asked about training on this practice, and they said there's nothing. It's just verbal. The issue that is most critical, I believe, is to the extent that even if there is a policy, it is not applied unilaterally. It is not applied to all customers. So you seem to be saying a couple of different things there. One is that you think that there's a dispute of fact as to whether there actually is a policy. Is that one of the... That may be also a dispute, Your Honor, because they say that there is a policy, but on the one hand, they say there's a policy. On the other hand, they can produce nothing related to this policy other than this verbal state. I have to admit, I had a lot of trouble with this case in the sense that there's supposed to be under the federal rules and under the local rule a statement by the moving party of what they believe the undisputed facts are, and then the opposing party is supposed to go through point by point and indicate we dispute this fact, and here's the evidence that disputes this fact, or we don't dispute this fact, so that the district court can then know, okay, what facts is the plaintiff claiming to be in dispute or not? I couldn't make heads or tails of the pleadings to figure out whether that was really done here because there were these voluminous statements of undisputed facts and voluminous responses, and it was very hard for me to get to the bottom of that, but I guess where I'm going with all of this is that I didn't really, maybe I missed it, but to the extent that you are arguing and you argued in your opening brief that there's a dispute of fact as to whether there really is a policy, what is the evidence that you have that places it into dispute? Because if they have a witness who testifies under oath by affidavit or declaration that we had the policy and they have a witness, your clients who testify under oath that they were told that there was such a policy, what is the evidence that places into dispute whether there was such a policy at all? The fact that we requested from the defendants' appellees copies any kind of documentation other than just the verbal statement of the policy. I have policies for what my clerks can't do, what my secretary can or can't do. I don't have it all written down. Does that mean that I don't really have a policy? Well, with regards to an operation involving a one-on-one relationship, I think it's different when you're operating restaurants. In this particular case, you have supposedly, they're alleging that there is this policy. However, when they're asked for the policy, when they're asked for training information regarding the individuals who are allegedly required to enforce or apply this policy, there is nothing. They admit they have nothing. Let me ask you, counsel, under Brady and our three-part test, the defendants say they have this policy. At least the facts of this case, it's sort of an interesting policy in the sense that there are exceptions to it. And so far, I can see from the factual case you do present that's admissible, but your argument in part is not only did the district court state the summary judgment standard in the defendant's favor, and I would agree that the way it was framed, it was framed quite negatively, but the district court opinion does include in there, would you not agree that he was obligated to view the record most favorably to your clients? That is correct. My point would be that in these discrimination cases, if you isolate each fact, you can say no discrimination, that's unlawful. But if you put it all together, something was going on here that your clients under oath say was discriminatory. So at least to your prima facie case, if you have to show it, you could say it's made, and then the defendants come along and say we have this policy. And I didn't really see you arguing that there was no policy in the sense that I thought your argument was the defendants may say they have a policy, and let's even assume they have a policy, but there are exceptions to it, and at least your client's view is that it was not being applied across the board, that they were being treated differently, and they were being treated differently because of their race. As I understand it, that's your case that you presented to the district court, and the district court basically came back, as I understood it, and said you just haven't offered enough evidence. And in their brief, they point out how there's all this that could be presented at trial to show that your clients can't or that you wouldn't win a jury trial. But that's not where you are, as I understand it. So the question in my mind is under our Brady decision, and I was proceeding on the ground that under Brady, defendants had established that there was a policy. And your argument is maybe so, or even assuming that, but there's no showing that it was applied across the board. And the defendant's response is that all you offered was speculation. You don't have any, you don't offer any evidence that the policy was not, you don't offer, proffer any evidence that were you to go to trial. This policy was not applied to everybody who was in the restaurant. And that there wasn't enough to show, given the defendant's explanation for the policy, and why it was, the business reason that the defendant offered, that that simply was not enough to meet your sort of threshold burden here. How do you respond to that argument? First, with regards to the, any explanation as to business reasons, this brings us to the issue of trial by affidavit. When you talk about- Counselor, I'm trying to get you to move beyond that, all right? Because I didn't understand, and maybe I misunderstood. I thought your argument was this, the defendants say they have some sort of policy. And my clients have offered evidence that it was applied in a discriminatory manner, unlawfully. And the district court basically took the position that there's a lot of speculation here, that your clients have offered evidence of what they think was happening, but they have no evidence. They don't even proffer that, were this to go to trial. They could present evidence that this policy, however vague it may be, and it's not in writing, wasn't being, at least as the defendants describe it, wasn't being applied across the board. If I may respond? Please, yes. We have three separate incidents involving three different groups of minorities at three different times. These minorities didn't know each other other than there was a family of Valleys. There was the group that was with T. Spence, and then there was the Williams and Sullivan group. These three groups all offer testimony that the same thing or similar thing happened to them. They did not observe anyone else who was Caucasian being asked to pay, to prepay for their meals. The three separate incidents arising at three separate times mutually corroborate each other, and I believe it's sufficient to take to a jury. In addition to the testimony of, with regards to the separate incidents and the three separate groups who were strangers to each other before this litigation, we also have the testimony of Ms. Teeb and Ms. Spence, who during the occasion with their girlfriends were sitting there and watching what happened with the Caucasian group when they came in. With regards to the Valley family, we do also have evidence apart from what may be considered hearsay, evidence proffered by, I believe, all of the Valley members that they did not see anyone else being that the restaurant, excuse me, the nightclub had just closed, so people were shifting from the nightclub to the restaurant. It would be assumed that if this policy was even handedly applied, the Valley family would have seen this policy be applied to other patrons of the restaurant. They saw no such thing. In addition, once they decided that they weren't going to prepay, the sequence of events that followed would seem to or is sufficient enough to take to a jury to indicate that this policy, to the extent it is a policy, is applied in a discriminatory fashion. With respect to the Sunday brunch, there was testimony presented by the affidavit and maybe elsewhere that there were basically two ways that brunch could be set up. You could either pay online and reserve your table and show up, or you could go in and eat brunch and then pay at the restaurant. To the extent that your clients did not see other people paying, what the defense argues and I think what the district court ruled is that that doesn't really give you enough evidence to go to a jury there because we don't know that there were any other people who were similarly situated to your clients at lunch in the sense that they came in without having paid in advance. That appears to be the reason. Give me your response to that. If I'm wrong about the reasoning, please correct me, or if I'm correct that that is the reasoning and that is the argument, tell me why that argument shouldn't be adopted by us. The argument shouldn't be adopted by this court because would be trial by affidavit which is precluded by Supreme Court. But you have the burden of proof in the case to prove the discriminatory application, and when you refer to affidavit, I assume you're referring to the defendant's affidavit? Yes. But you, in discovery, you know, ordinarily what you might do in a case like this where you're testing whether there's a policy and what its nature is, what its roots are, is to notice a deposition. And you can even, if you don't know who adopted the policy, you know, do it under rule 30b-6 and say, please produce for deposition the individual with knowledge about this policy. And then you would not be here with leaning on their declarations, but you didn't do that. So you have, declarations are competent on summary judgment because presumably the declarant can then come into court at trial. So that's, I mean, we have declarations that they've all judged. In discovery, we requested the policy, we requested the training, any evidence of the training. We don't have anything of any nature with regards to the existence of the policy, with regards to the training that anybody receives, regards, it just doesn't exist. But to surmount summary judgment, you need to then fill up and say, why do you think that's suspicious? I mean, many businesses, especially things like food industry, they don't run on paper. They run on person to person contact. And so if you think that's opening up a lot of leeway for discriminatory applications, it's your burden to show that. And so when you talk about trial by affidavit, I mean, that is summary judgment, giving us the dry run, often an affidavit form or a deposition transcript. Well, in this case, while we only have the affidavit of the, excuse me, the penalties manager, we have eight depositions of plaintiffs, which are being just dismissed by the district court. I don't think so. I think the question is, what do they show on the pertinent point? They show what people observe, but they also say, well, why did I think it was discriminatory? I can't think of any other reason. Or, you know, what's the basis for your conviction that it's discriminatory? It's just speculation. It made me feel suspicious. Well, I think what the court is referring to is an inference drawn from the facts. And drawing inferences from the facts is the jury's province, not the judge. And in this case, I believe the appellants had more than sufficient testimony based upon the entire record what happened to them and what they observed to take it to a jury and let the jury decide whether or not those observations, those incidents, those events were sufficient in the jury's mind to draw the inference that there was discriminatory behavior. So here's the, I guess, follow-up on Judge Pillard's question, kind of get to the brass tacks. With respect to the brunch, let's suppose there was a trial and the evidence was essentially the same as what we have in the record now, is that your clients testified that they were asked to pay. They looked around. They didn't see anybody else asked to present a credit card. How would the jury conclude without knowing anything else whether the other people who weren't asked to present the credit card, how would the jury know whether or not those people had already paid one line? It would be, if there was nothing else in the record that was an indicia, a possible indicia of discriminatory conduct or a disparate treatment. But there is more in the record with regards to the brunch incident. In the record, and there's this deposition testimony, that before being allowed to enter the brunch, Mr. Williams was searched, body searched, and Ms. Sullivan was also searched. And they said they did not observe anyone else being searched. You then get into the restaurant and they're told to sit anywhere. Then they go and do what they're supposed to do. One goes to the bathroom, the other goes to the buffet, and before they can barely get back, they're asked to prepay. Now, the question becomes, is their observation, because they had a waitress, indicating that this is unusual? I've never done this before. We also have testimony. Never done what before? Never been asked to prepay before. We also have testimony in the record. The plaintiffs say they've never been asked to prepay. That's correct. We also have testimony in the record. But I'm not sure that that proves anything with respect to whether that's unusual for this record. We also have in the record the testimony of Ms. Vallier, who had been to the restaurant numerous of times and had never been asked to prepay. She explains that herself by saying that she was with an individual who was a friend of the owner, or an individual who was in the restaurant industry, and so she knew that the policy wasn't being applied to them because she thought they were being caught. She never knew that the policy wasn't being applied to them. She didn't know there was a policy. Exactly. She herself characterizes in a way where it's not indicative of anything, and presumably she also was her same self and her same race and ethnicity at that time. It is our position that given the record, notwithstanding that these are observations, unfortunately, a lot of times discriminatory conduct is based on observation. It is rare that a defendant or a party will come and say to you, because you are Black, or because you are Latino, I'm doing thus and so. It has to be inferred from the circumstances. It has to be inferred from the body language. It has to be inferred from corroborating other incidents. It has to be inferred from the sense of the individual. I agree with all of that. Just to kind of get to the nub of it, I think that the brunch, I think, is a more difficult thing evidence-wise for me to understand what evidence that a jury could have other than speculation where we don't know the circumstances of these other people who were being observed by the plaintiffs. If all of those people had prepaid online, then their observations that they didn't see them being asked for credit cards kind of doesn't really prove anything. I think that the circumstance is a lot different and a lot stronger for you for the after 10 p.m. situation because there, everybody should be similarly situated, right? Everybody who's coming from the nightclub or coming in after 10 p.m., they haven't, there's no evidence that any of them would have prepaid online before they got there, at least that I saw on the record. So, to the extent that the plaintiffs say, we come in, it's after 10, we're asked to prepay, we see all of these other people come in also after 10, we don't see any of them presenting credit cards or any form of payment to either run a tab or to prepay, however you want to call it. To me, that's easier to infer from the plaintiff's observations that there is a disparate treatment. So, I think that, like, the after 10 p.m. seems to be a different kind of circumstance than the brunch. That's why I'm just trying to, like, nail down exactly what this evidence is that causes there to be a dispute of respect to kind of each of the sets of claims. I think, as I mentioned before, if each of these claims was a separate case happening at a completely separate time in separate jurisdictions, if it was just one case, indeed, we would be in a situation of, well, that's what the plaintiffs think or the appellants think, and we'd have to do this inference. But we have three, we have a pattern of behavior with this particular defendant, and this pattern of behavior is, there's sufficient evidence in the record, we believe, to survive summary judgment because the pattern of behavior is indicative that this alleged policy is only applied to minorities, even when there are Caucasian customers present. So, I would agree with the court. If it is only one incident, one incident, and it was just one case alone. That's not my point. My point is that to just kind of break it in down the brass tacks, the evidence seems a lot weaker for the Williams' claim with respect to brunch versus the Valleys and the plaintiffs seem to be kind of, by definition, similarly situated to whoever else comes into the restaurant at that time, whether they're black or white or whatever. Whereas, we don't know whether the plaintiffs who came in for brunch, Williams and Sullivan, are similarly situated to the people that they saw that weren't asked for credit cards. Do you get my point? I understand your point, Your Honor. However, to that point, there is testimony that there was no signage or any kind of other information indicating that this was a prepay or pay online type of brunch. There was no indication at the time when the couple came in that this was a pay in advance kind of brunch. I think we've all probably gone to brunches where you either pay online or pay in advance, but we've also gone to lunches, brunches probably, where, and I know I have, where it's a set price and it is after you've had your meal that you are asked to pay. So that this practice that defendants allege to be the three incidents together, there is a pattern of behavior that is evident. And if the court completely disregards all of the plaintiff's evidence, which it is not allowed to do, and if the court weighs credibility, which it is not allowed to do, it must assume that the of the appellant plaintiff's is true. With that assumption and drawing inferences, we believe there was more than sufficient evidence from the plaintiff's appellant to take this matter, to survive summary judgment and take this matter before a jury. Judge Rogers, any further questions? I, did you reserve time? Yes, I did. Two minutes. All right. We'll give you a rebuttal time, even though you have to go very quickly. And we'll hear now from Mr. Krause. Thank you, Ms. Perron. Thank you and good afternoon. Scott Krause on behalf of the appellees. As has been revealed in the questions from your honor during appellant's presentation, this case is truly about the absence of any evidence to take this case to a jury. There are no disputed material facts and the appellees went through painstaking efforts at the district court level before Judge Nichols to lay out very detailed statement of undisputed facts and no disputed facts were identified by the plaintiffs below. There aren't... Let me see if I understand what you're saying. You filed statements of undisputed fact, which you're required to do under the federal rules and under the district court's local rules. That's right. Are you saying that the plaintiffs didn't file responses to those at all? Or are you saying that they filed responses to your statements that did not dispute any of your lists of undisputed facts? It's a little bit of a hybrid, as I recall, your honor. I do not recall that there were actually listings of the facts allegedly in dispute. There were certainly arguments made in which the plaintiffs below added more detail on the factual record in support of their arguments. But I intentionally, your honor, put the entire factual record before Judge Nichols below, all of the depositions in their entirety. I mean, that's a matter of form, not substance. You put them all in one place. The plaintiffs I thought the thrust of Judge Wilkins' question. Right. And what I'm arguing, your honor, is assuming the truth of all the plaintiff's allegations, there is just no tribal issue. I'm trying to ask something different. I'm sorry. Because candidly, if I'd been the district judge and you had filed what you filed, I would have required you to the goal on summary judgment is to kind of pare down what are the key facts that are material to deciding the case. And to the extent that one side or the other believes that those key facts aren't really in dispute, then they say that and then they show the evidence that shows that they're not in dispute. And then the other side can say, well, no, that key fact really is in dispute because, you know, we have testimony that contradicts, you know, the testimony of the moving party. What I'm trying to get at is in the district court, did the plaintiffs say they identified this fact that they said is not in dispute. We disagree. That fact very much is in dispute and it's in dispute because we have this deposition testimony X. Did they do that? No, they did not. And the testimony via affidavit from Mr. Aguilar is not in dispute. It spells out the reason and the rationale for two different policies at Rewind. And that is a policy after 10 o'clock of requiring prepayment or collateral put up for anyone who comes in. The branch issue is entirely separate. And I think your honor addressed that in questions to council, but there is simply no evidence that those. Let me just cut to the chase here. It's been a long morning. I want to get to the nub of this. If plaintiffs testify that, you know, we are people of color, we come in, it's after 10 o'clock. We're told that there's a policy where we have to prepay and present credit cards, but we look around at everybody else who's come in after 10 o'clock who happened to be white, and we don't see any of them presenting credit cards. Why isn't that enough to raise a dispute of fact as to whether or not this policy is being applied discriminatorily? Because the record does not support any of the plaintiff's ability to say I looked around and I didn't see white people not being required to prepay. Ms. Plazas, when she was deposed, conceded she had no reason to believe any other patron was allowed to order without prepaying. Ms. Gossett said she did not pay attention to whether any other customer was permitted to order without prepaying. Ms. LeBay said she did not observe anyone else order food at Rewind and does not know whether anyone else was asked to prepay for meals. She went on to say I don't know if it's racial or discrimination, but I don't think you treat customers like that. Ms. Plazas said she could only speculate that minorities would have to prepay, but Caucasians would not. I specifically asked each of the VA plaintiffs if they observed anyone else at Rewind that night not being asked to prepay, and they had no evidence. And if we turn to Tyvin Spence, all they were able to say when they were deposed is that they observed a table with Caucasian patrons settling up at the end of the meal with credit cards, multiple. But as pointed out from the record and consistent with Rewind's policy, seeing someone settle up at the end is not indicative in and of itself that they weren't asked to open a tab when they came in as collateral for the meal. Settling up doesn't mean a credit card wasn't given. And so there is virtually no record from which a trier of fat could reasonably conclude that Rewind did not apply this policy uniformly. And counsel speaks to a cumulative series of events or a pattern. All the pattern of this three series of events shows is conduct by Rewind consistent with its established policies. There's no evidence that those policies were applied in a disparate manner. It seems like at least bad business practice. I mean, I'm not in the restaurant business, but to have a policy that's out of line with the typical policy. I mean, at a bar, you do have to open a tab. Typically at an establishment, you don't. And, you know, there are plausible business reasons for having such a policy, but the fact that there's nothing in paper anywhere and there are no signs anywhere to just tell people when they're coming in so that the servers aren't having to have these unpleasant interactions with people who are unfamiliar does make one wonder whether this actually is a policy or whether it's just something that some of the servers decide to ask about because they've had problems in the past. And I especially wondered that being your interrogatory number four, which says, state whether on any occasion you've ever witnessed other patrons informed of a requirement to prepay. And if so, you know, tell us about it. It sounds like if that's a question coming from an establishment that denies having a requirement to prepay. Well, no, no, you're right. That was my effort to find out whether or not plaintiffs actually had any evidence that would support their claim. And I look at. You don't ask. And by the same token, did you ever see anyone not be required to come in and actually not be required to prepay? You see to be served without you don't ask that question, which is the question one would expect. If we're trying to come up with comparators in an establishment that actually does have to. Perhaps it should have been a better word interrogatory. And that may have been a typographical error. I don't recall, but I explored all of those issues in depth when I was a plaintiff. And you may be right that it would be a better business practice to post a sign or have something in writing. But that doesn't make it unlawful. When you read Mr. Aguilar's affidavit and you understand this is a crowded establishment. You understand. Middle of the night. I'm saying it's an unusual policy. And as you've experienced, some of the people feel that it's inhospitable and they may wonder why it's being directed at them or whether it's being applied to them. There's no sign. There's nothing really moving that concern or that inference. And I understand that. It's certainly a shame that we live in a society where people would be made to feel that way. But the point of this exercise is there's simply no evidence that can go to a jury to prove in any way that this policy wasn't applied uniformly to everyone or that people of Latina or black or black patrons were singled out solely for the application of the policy. Well, let's play devil's advocate for a minute. You would agree with me that the normal practice in a restaurant is to present payment at the end of the meal, a form of payment at the end of the meal? I would concede that that is normal in certain establishments with white staff, not exclusive, I guess. So, I guess the other side of it is that if you're going to do something that's abnormal, that might cause there to be some sort of questions or hard feelings or just kind of make it more difficult for your white staff who are trying to, you know, keep customers happy and not have them mad at them so that they will get tips so that they, you know, that's why they're working to make money. That one would, it would be in everyone's interest within the company to post that policy so that there wouldn't be any questions or concerns or disputes or arguments or suspicions so that the customers will be happy, so that they will be big givers. And the fact that it's not written anywhere, it's not on the menu, it's not on the sign, it's not on the website, it's not anywhere. We assume usually that people act reasonably and in their interests. It would be reasonable and in the restaurant's interest to post the policy. So, if they didn't do that, then why isn't that evidence that there ain't really no policy? I will accept, Your Honor, that posting may be a better business practice, but as pointed out, there's no legal requirement to post a policy. And as Mr. Aguilar said in his affidavit, until the events that gave rise to this particular lawsuit, the restaurant had never had any complaint with regard to any patron being asked to prepay. So, they had never experienced that problem before these incidents. Do we know from the record how long this policy had been in effect? Standing here at this moment, Your Honor, I do not recall, I do not believe that is in Mr. Aguilar's affidavit. So, it could have been yesterday before these particular plaintiffs, by these particular defendants. I know it was prior to these plaintiffs coming to the restaurant, Your Honor, because they said it was an established policy. Who said that? Mr. Aguilar. Who says it? Mr. Aguilar, the operations manager. Oh, I understand that. But there's no evidence. You know, when you're challenged, you say, well, this is an established policy. All right. That's what the nature, it seems to me, of Judge Wilkins' questions are getting to. All right. And to what extent the plaintiffs benefit from that? And your argument, I think, is that all the admissions that were made during discovery destroy the inferences on which the plaintiffs need to rely. Correct. There's simply no evidence to present to a jury in this case to suggest in any way that Caucasian customers were not asked to pay in accordance with the policy. Well, I wasn't clear from the record that there were any Caucasians in the restaurant at all. At this time of night. I mean, that was one of the issues. Well, certainly in this time, and Ms. Spence identified there being Caucasian customers in the restaurant that evening. At what time, Your Honor? It was early morning hours after 2.30 a.m. Okay. So after the bar had closed. After the other clubs in the area had closed. Yes. I've seen, I've gone over my time. If Your Honors have no further questions. Thank you. Your Honors, any further questions? All right. Thank you. Thank you, Mr. Krause. Ms. Brown, you have two minutes for rebuttal. I will focus my two minutes on the issue of disputed and undisputed facts. Contrary to representation of counsel, and I'll be happy to provide this to the court, there was a point by point dispute as to disputed facts contained in the plaintiff's opposition to defendant's motion for summary judgment. Not only they had something like 230 sentences or assertions. There was a response or dispute as to each one of those statements, and they were matched up to the statements of the defendant. So for there to be any representation that there were no facts or we presented no disputed facts at the lower level is inaccurate. And as again, I would happily supplement this record with the... We can look at the docket and see. I just hadn't done that before this argument. In the future, that's the first thing you should put in a summary judgment, J.A. It's the road map. That's on counsel's way. Yeah, it's important. It's not a rule. All right. Well, a part of summary judgment is the statement of disputed facts, and there was a section that was submitted to the court, not in the appellate appeal documents, but there was a definitely look at the district court for that. What about your friend on the other side saying that none of the plaintiffs actually testified that they really had an opportunity to observe Caucasian diners at night, get their food and not being asked to present a credit card? Ms. Teeb and Ms. Spence both testified that while they... I believe Ms. Teeb for sure, Ms. Spence in part testified that while they were waiting to get their order, and then they were told the order was never put in because they didn't give them a credit card or didn't prepay, they observed a group of Caucasian customers come in, be seated at regular tables, receive their menus, place their orders, receive their drinks, their water, their appetizers, and their meal, dessert, I assume, and then pay afterwards. There's a difference between settling up and prepaying. I noticed that counsel talks about there were multiple credit cards. I'm not sure the record bears that out with regards to the observations of Ms. Teeb and Ms. Spence, but even if there was a settling up, settling up may have to do with the difference between what you ate, but it does not say that these individuals were asked to prepay. There is a dispute as to what these individuals, namely this white group of customers, were doing and the practice applied to them versus the Black customers and how they were being treated. In addition... Let's assume for the sake of argument that I agree that there is a dispute of fact as to what happened on that night with Ms. Teeb and Ms. Spence and also on the other evening. Can you get past summer judgment based on merely those two instances where the policy was not taking the facts and the light most implemented fairly or it was implemented discriminatorily, or do you need to, in order to get past summary judgment, you need to establish a pattern and practice? I think that the pattern and practice is important in this particular case. Again, if there had just been one incident, we probably would not be sitting here, but contrary to the representations of counsel, Ms. Viate testified that she did some research online and found numerous other complaints by minority customers indicating that this regards to what... If they're going to assert that there are no other complaints, then it would be admissible as to counter their assertion that there's no other complaints. But, I mean, that's all... I guess that's all hearsay. I don't see how that proves the truth of those matters asserted in those other complaints without getting declarations or from those parties that that is what happened. No, I think if we have... And she did research online, so what she was looking at would be online reviews. And those online reviews, provided they had not been taken down now, would be still available online. But I don't understand how any of that is competent evidence in a court of law. That's what I'm getting at. Well, the issue... The statement was made by a counsel that there were no other complaints. Let me just try to narrow down here. I'm just trying to understand the law here. Do you have to prove a pattern and practice of discrimination to get past summary judgment? Yes Yes. Sure, that's your answer. Well, it's a nuanced answer. When you say a pattern of practice, is it... We do not need to show that there was... As to all of these incidents, there's this underlying practice. If the the black group of patrons just once, in this particular instance, revolving a restaurant serving food, that would be sufficient to get past summary judgment. If we're talking about employment and other types of discrimination, I think you're involving the pattern and practice concept. However... That's not how I understand the law. You can either prove just an individual instance, or you can prove a pattern of practice, and you may get different relief. But the difficulty is when you're trying to prove an individual instance, you have to show either direct evidence of discrimination, someone spoke in a biased way or policy was reported in a way that reflects bias based on race. Or you often raise inferences by showing similarly situated people who, but for their race, are in the same position as the plaintiff and are treated differently. And that's why there's so much attention and why I think Mr. Krause is saying, people aren't actually claiming that they either saw white plaintiffs, white patrons, not having the policy applied to them, and or other patrons of color having it applied, the inference doesn't arise. I mean, this may just be a completely irritating policy. And if I'm black and I go into an establishment that doesn't have a written policy and they start doing really sort of irritating and mistrustful seeming policy to me, one of the things that crosses my mind is going to be, are they doing this to me only because I'm black? What is the story? But then the question of, is that accurate? Is you have to go a step further? I absolutely can see how each of these plaintiffs would wonder that. And then the question is, have they gone the next step and shown it so that someone who wasn't there and would say, I see that it really is being unevenly applied. Two points. One with regards to Ms. Sullivan and Mr. Williams, they don't both testify that they did not observe anyone else being treated that way. They also, I believe, testified that they were the only black customers at the venue. And I think that the question here is, the standard is not the same at summary judgment as if we were at trial. In order to, as the court knows, to survive summary judgment, you have to assume that the assertions and allegations of the plaintiffs are true and take the inferences in their favor. Now, whether you want to, if you call it speculation, I know that as a black woman, there have been many a time when somebody has done something to me and I believe that it is discriminatory, but that person did not say to me that they were doing this because I was a black woman. And I could observe that they did not do the same thing to someone coming along. So in discrimination cases, I think the issue of inference becomes crucial to the individual's perception. And I think the inference part of the evaluation is to remain with the jury. It is not to remain. It is not to be the judge's... I need to interrupt to just clarify something. So let's assume that the evidence showed that on every other day that the restaurant operated, they had the policy and it was applied with respect to everyone uniformly. But, so we had like videotapes, whatever we need to like prove that was beyond the shadow of a doubt, but that the evidence at least created a dispute as to whether or not they treated blacks and whites differently on these three particular occasions. That's what I was getting at when I asked you a question earlier about whether you have to pattern and practice to survive summary judgment. Let's suppose they performed beautifully, completely race-neutrally on every other day, but for whatever reason, on these three days, these wait staff who waited on your clients decided that they were going to not apply the policy or apply a policy discriminatorily with respect to them. The way that these various different anti-discrimination statutes work that are the basis of your claims, do you surpass, is that enough for you to get past summary judgment, or do you need to have evidence that there is a kind of a practice of discrimination as opposed to one-off discrimination on these three occasions? I think all we have to establish is that there was, as to each of the plaintiffs, there was one experience of discrimination. I do not think the law requires us to show, appellants to show a pattern of practice as to each of these plaintiffs. I think that if we have been established sufficiently through the testimony and other evidence that has been proffered by the plaintiffs that there was evidence that the plaintiff was treated disparately, that one individual was treated disparately, and there was a distinction in race or something that is prohibited, then it would be incumbent upon the defendants to come forward and say that there was a legitimate reason for this. We would still then have the opportunity to come back and say that this is pretextual. This is not really the reason why they're doing it. The reason why they're doing it is really because they're discriminating. In the sense of pattern and practice, we don't have to have a pattern. I'm willing to give you that. Yes. I'm sorry. One last question I have for you. Go ahead, Judge Rogers. Go ahead. If someone just behaves in a really rude way to someone who's in a protected class, woman, African-American, African-American woman, someone of a particular religion, and doesn't express it in a way that ties it to their protected class, which is really rude, that person might subjectively draw an inference. This is because I'm Jewish. This is because I'm Black. What do you need other than that inference? Is that inference enough in your view to take it to a jury, or do you need more? If so, what more? To distinguish between someone who just was rude and someone who was discriminatory. You need more than just, I feel like I've been discriminated against. You need other evidence in the record, other behavior short of the person coming and saying to you, you know, I'm doing this. You don't have a mind reading machine. Yeah. If they're just rude, they're just rude. However, if you have other evidence that would then you would have sufficient evidence to take it to a jury. I believe in this case, the appellants and plaintiffs below have provided more than enough evidence to show that this wasn't just, oh, we feel slighted. There were continuations of behavior. There was additional contextual behavior as to all of these three incidents. Also, with regards to Judge Wilkins, your question about videos, we asked for the videotaping and other kinds of evidence of the events and we were provided with nothing. So, it is not for a lack of seeking evidence that would support the defendants or appellees in this case position that there is some legitimate business practice. The fact of the matter is their statement with regards to a legitimate business practice only came to fore as a result of the summary judgment. They never provided anything. They had discovery before. They never had anything saying this is our business practice other than there was an answer to an interrogatory and then we have an interrogatory that posed a question about business practice, whether or not there was a policy with respect to prepaying meals. Yes. Did you propound an interrogatory? Yes. And what did that interrogatory say and what did they respond? Their response was we have a policy and the question was to provide not just we have a policy, but where's the evidence of this policy? Is it written anywhere? Is there a handbook? Is there training that's provided to managers? How did the wait staff get trained to know how to apply this? And we got absolutely nothing. We're stonewalled. And actually, we're not stonewalled. We were told explicitly there is nothing other than the verbal statement that there's a policy. But I guess I'm just trying to be precise here. Before the summary judgment briefing, you asked them if there was a policy and they said, yes, there is a policy, but we don't have any documentation of the policy. Correct. Because what you said earlier seemed to suggest that the first you heard of a policy at all was after you filed your summary judgment brief. That's not the case. There was a delay in discovery. So there was discovery that was propounded and there was a response. And in the response, they said there was this policy. We asked about the policy, not just is there a policy, but we the policy, et cetera, et cetera. And we were told there's nothing other than our statement that there is this policy, which we believe the statement to be true textual anyway. Anything further, Judge Rogers? All right. Thank you, Your Honor. Thank you very much. Mr. Brown, Mr. Cross, case is submitted.
judges: Pillard, Wilkins, Rogers